UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ECHOSENS, S.A., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-11373-ADB |
| E-SCOPICS S.A.S., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Plaintiff Echosens, S.A. ("Echosens" or "Plaintiff") brings this action against E-Scopics S.A.S. ("E-Scopics" or "Defendant"), alleging that E-Scopics directly, willfully, and/or indirectly infringed and continues to infringe two patents held by Echosens, U.S. Patent Nos. 11,690,592 (the "'592 Patent") and 11,980,497 (the "'497 Patent") (together, the "Asserted Patents"). [ECF No. 1 ("Complaint" or "Compl.")]. Now before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 20 ("Motion" or "Mot.")]. For the reasons set forth below, the Motion is **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part.

## I.    BACKGROUND

The following relevant facts are taken primarily from the Complaint, which the Court assumes to be true when considering a motion to dismiss. <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014). As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65 (1st Cir. 2008)

(alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

### A. Factual Background

 The '592 Patent was issued on July 4, 2023 and discloses "a device and method used to measure the viscoelastic properties of a viscoelastic medium, e.g., a liver." [ECF No. 1-1 at 2; Compl. ¶¶ 9-10]. The device "can be used by a medical practitioner to assess whether a patient has liver fibrosis." [Compl. ¶ 10].

In November 2023, the "Liver Meeting" ("TLM23") was held in Boston, MA at the Hynes Convention Center. [Compl. ¶ 5]. At TLM23, Defendant, a French entity with a principal place of business in France, [id. ¶ 2], demonstrated to an audience how to use its Hepatoscope device (the "Accused Product"), which it had "imported" to the United States for the occasion, [id. ¶ 5]. Around the time of TLM23,[1] Defendant announced on its LinkedIn that "it w[ould] start taking orders for #Hepatoscope, while attending [TLM23]." [Id. ¶ 6].

The '497 Patent was issued on May 14, 2024 and similarly discloses "a device and method used to measure the viscoelastic properties of a viscoelastic medium," which "can be used by a medical practitioner to assess whether a patient has liver fibrosis." [ECF No. 1-2 at 2; Compl. ¶¶ 13–14].

Sometime prior to May 18, 2024,[2] Defendant again posted on its LinkedIn, this time announcing its upcoming attendance at the "Digestive Disease Week" conference in Washington,

---

[1] The Complaint is unclear to precisely when Defendant announced this, and the LinkedIn posts provided are undated. See [Compl. ¶ 6]. Construing the allegations favorably to Plaintiff, the Court will assume that Defendant posted this announcement to LinkedIn around the time of TLM23.

[2] Again, the Complaint is not clear to precisely when this was posted, and the LinkedIn post is undated. See [Compl. ¶ 23]. Given that the LinkedIn post announced future attendance at these conferences, the Court will construe the post as pre-dating the conferences.

D.C. from May 18–21, 2024 and at the American Diabetes Associate Scientific Sessions in

Orlando, FL from June 21–24, 2024.  [Compl. ¶ 23].  The LinkedIn post told readers to "[m]eet

[Defendant] there to discover Hepatoscope."  [Id.].

Defendant has engaged at least one distributor or service provider in the United States for

sales and/or use of the Hepatoscope, as evidenced by an individual named Ashley Martin posting

on her LinkedIn, in approximately April 2024,[3] that "Infinite Consulting Empire, LLC [was]

excited to introduce a detailed, higher reimbursement alternative to the fibroscan" and invited

people to schedule Infinite Consulting Empire to "perform these studies, or opt to have . . .

[their] . . . staff trained to perform them."  [Compl. ¶ 24].  The post attached an image explaining

the Hepatoscope.  [Id.].

### B.  Procedural History

Plaintiff filed its Complaint on May 24, 2024, alleging one count of infringement related

to the '592 Patent (Count I) and one count of infringement related to the '497 Patent (Count II).

See generally [Compl.].  Defendant moved to dismiss on August 1, 2024, [Mot.], Plaintiff

opposed on August 15, 2024, [ECF No. 24 ("Opp.")], and Defendant filed a further reply in

support of the Motion on August 23, 2024, [ECF No. 27 ("Reply")].  Per this Court's order,

[ECF No. 30], and in lieu of a hearing, both parties submitted supplemental briefings on certain

issues on February 21, 2025, [ECF Nos. 32, 33].

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all

---

[3] As with the other LinkedIn posts, this post is also undated.  The link to the post indicates that it
was posted approximately ten months before this order, which would be in or around April 2024.

reasonable factual inferences in the plaintiff's favor.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

The Federal Circuit has made clear that a plaintiff "need not 'prove its case at the pleading stage.'"  Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021) (first quoting Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018), and then quoting

In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012)).  Instead, for Plaintiff's claims to survive the motion to dismiss, its "factual allegations need only be enough to place [Defendant] on notice[ ]" so Defendant "has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself."  Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc., No. 19-cv-12533, 2020 WL 2079422, at *3 (D. Mass. Apr. 30, 2020) (quoting Simplivity Corp. v. Springpath, Inc., No. 4:15-cv-13345, 2016 WL 5388951, at *3 (D. Mass. July 15, 2016)) (internal citation and quotation marks omitted).

## III.    DISCUSSION

### A.  Direct Infringement Allegations

Section 271(a) of the Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a); see also Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1290 (Fed. Cir. 2011).  To succeed on a claim for direct infringement, the allegedly infringing product must practice all elements of a patent claim.  Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

Defendant contends Plaintiff has failed to state a plausible claim for direct infringement of the Asserted Patents because, "[u]nder Federal Circuit precedent, demonstrations of a device in a trade show setting do not qualify as a 'use'… [n]or do promotional materials which lack any specific and definite terms (such as quantity, time of delivery, or terms of payment) constitute an 'offer to sell' under § 271(a)[.]"  [ECF No. 21 at 6]; see also [id. at 10–13].  Plaintiff, in addition to responding to Defendant's arguments, argues that it need not establish a use or offer to sell the Accused Product because it has alleged that Defendant imported the Accused Product into the

United States for TLM23, [Opp. at 8], that Defendant acknowledges the "accompanying importation" in its Motion, [id. (citing ECF No. 21 at 6–7)], and that "the unchallenged importation alone is sufficient to establish direct infringement, [id. at 9 (citing Marposs Societa Per Azioni v. Jenoptik Auto. N. Am., LLC, 262 F. Supp. 3d 611, 617 (N.D. Ill. 2017))].[4]  In the supplemental briefing ordered by this Court, Defendant argues that importation for purposes of demonstration at a trade show is not sufficient to constitute direct infringement; rather, the importation must be accompanied by an "intent to sell," which Defendant contends Plaintiff has not pleaded.  [ECF No. 32 at 8–10].

### 1. Importation

Congress amended Section 271(a) in 1994 to include importing infringing devices into the United States as a separate basis for liability.  See Uruguay Round Agreements Act, Pub.L. No. 103–465, § 533(a)(1), 108 Stat. 4809, 4988 (1994).  Congress did not, however, define "imports into the United States," and "[t]here is [and continues to be] little established case law on how the 'importation' of a product can constitute direct infringement within the context of 35 U.S.C. § 271(a)."  Creo Prods., Inc. v. Presstek, Inc., 166 F. Supp. 2d 944, 976 (D. Del. 2001), aff'd, 305 F.3d 1337 (Fed. Cir. 2002).  The case law that does exist reflects two different approaches.  See Unicorn Energy AG v. Tesla Inc., 740 F. Supp. 3d 930, 960 (N.D. Cal. July 17,

---

[4] In its supplemental briefing, Defendant argues (without citation) that Plaintiff has failed to "properly allege[]" importation of an infringing product because "Plaintiff was required to compare **the imported product** to the claimed invention."  [ECF No. 32 at 5, 7].  Specifically, Defendant contends that Plaintiff's claim chart "fails to properly connect the evidence cited to what was actually imported."  [ECF No. 32 at 7, n.1].  Plaintiff has alleged that the Accused Product was imported to the United States and that the claim elements in their claims chart correspond to the Accused Product. [Compl. ¶¶ 5, 6, 20–24, 29–31]; [ECF Nos. 1-3; 1-4].  At this stage, this is sufficient to give Defendant "fair notice of what the . . . claim is and the ground upon which it rests."  Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (first quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007), and then quoting Twombly, 550 U.S. at 555).

2024) (collecting cases).  Under one approach, the act of importation, standing alone, is not enough for liability.  Instead, to impose liability for direct infringement, the importation must have a "commercial purpose[] or [be] for purposes of sale," that is, it requires commercial intent. See, e.g., SynQor, Inc. v. Cisco Sys., Inc., No. 2:14-cv-286, 2014 WL 12641603, at *8 (E.D. Tex. Sept. 29, 2014) (finding no direct infringement on summary judgment where infringing products only passed through the United States on their way to another destination and there was no "evidence the shipments were for commercial purposes or were for purposes of sale"); Creo, 166 F. Supp. 2d at 976 (affirming grant of summary judgment where record contained "absolutely no evidence that . . . [defendant] . . . ever imported the . . . [infringing product] . . . in the United States with the intent to sell it," further stating that "the claims of direct infringement by way of sale and of importation go hand in hand" (quoting Quantum Grp. Inc. v. Am. Sensor Inc., No. 96-cv-0761, 1998 WL 766707, at *6 (N.D. Ill. Apr. 10, 1998))); Medtronic Vascular, Inc. v. Bos. Sci. Corp., 348 F. Supp. 2d 316, 322 (D. Del. 2004) (no direct infringement liability on summary judgment where it was "uncontested that the . . . [infringing products] . . . were not intended to be sold"); Black & Decker, Inc. v. Shanghai Xing Te Hao Indus. Co., Ltd., No. 02-cv-4615, 2003 WL 21383325, at *3–4 (N.D. Ill. June 12, 2003) (granting motion to dismiss for lack of personal jurisdiction because "simply bringing a product in the United States for display at a trade show does not constitute importation under § 271(a), absent evidence that the corporation brought the particular product into the United States with the intent to sell it").[5]

---

[5] In its supplemental briefing, Defendant cites to Creo and Black & Decker in particular to support its contention that "importation of an accused product for demonstration at a trade show is insufficient to constitute infringement under 35 U.S.C. § 271(a) unless there is an accompanying intent to sell."  [ECF No. 32 at 10].  As discussed further infra, these cases are distinguishable because Plaintiff here has pleaded that Defendant advertised that it would start taking orders for the Accused Product following the importation, whereas the undisputed facts on

The other approach does not require any such commercial intent. District courts adhering to this second approach, reasoning that § 271(a) expressly differentiates "imports" from both "sells" and "offers to sell," have held that "an importation of an infringing product need not include, nor be followed by, a sale, offer to sell, or any other particular course of action." Fellowes, Inc. v. Michilin Prosperity Co., 491 F. Supp. 2d 571, 583 (E.D. Va. 2007). In this formulation, "the infringing activity [to support liability under § 271(a)] is the unauthorized importation of an infringing product itself." Id.; see also Largan Precision Co, Ltd v. Genius Elec. Optical Co., 86 F. Supp. 3d 1105, 1115–16 (N.D. Cal. 2015), aff'd sub nom. 646 F. App'x 946 (Fed. Cir. 2016) (stating that the "conclusion that importation occurs only when a product is brought into the United States for commercial benefit is not well taken" because "the plain text of section 271(a) does not contemplate such limitations"); Athena Feminine Techs. Inc. v. Wilkes, No. 10-cv-04868, 2011 WL 4079927, at *4 (N.D. Cal. Sept. 13, 2011) ("Under the plain terms of § 271(a), the act of importation, standing alone, is sufficient to state a claim for direct infringement.").

Case law regarding whether importing a product to the United States for demonstration at a trade show is sufficient for direct infringement liability is even more limited, particularly in the context of a Rule 12(b)(6) motion to dismiss. Although not in the same procedural posture, Plaintiff points the Court to two Federal Circuit opinions, which it contends are instructive. [ECF No. 33 at 12–14].

---

summary judgment in Creo and as pleaded in Black & Decker did not establish any similar commercial intent. 166 F.Supp.2d at 975–76 (declining to speculate as to commercial intent at summary judgment "[g]iven the paucity of the record" on the topic); 2003 WL 21383325, at *3 (because plaintiff "provided no evidence that . . . [defendant] . . . had any intent to sell" the accused product the court declined to find personal jurisdiction ).

First, in <u>Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico</u>, the parties "urge[d]" the Federal Circuit to consider the merits of defendant's argument that plaintiff's importation of an infringing product for a trade show demonstration imposed direct infringement liability under § 271(a).  563 F.3d 1285, 1298 (Fed. Cir. 2009).  The Federal Circuit, however, declined to reach the merits of "whether Synthes ha[d] made a *prima facie* showing of importation, offer to sell, or use within the meaning of § 271(a)" because the question on appeal was one of personal jurisdiction, and the relevant long-arm statute did not require the analysis. <u>Id.</u>  That said, the Federal Circuit concluded that plaintiff's claim for patent infringement sufficiently arose out of defendant's activities within the forum for purposes of jurisdiction, despite conceding that defendant did not direct any "sales efforts" at the forum.  <u>Id.</u>  The Court reasoned that defendant "purposefully directed its travel with the . . . [infringing products] . . . to the United and then displayed those products at a trade show."  <u>Id.</u>  Thus, at least for purposes of personal jurisdiction, the Federal Circuit seemingly signaled that a patent claim for direct infringement can arise out of defendant importing a product for demonstration at a trade show, regardless of whether there was accompanying sales activity.  <u>Cf.</u> <u>Black & Decker</u>, 2003 WL 21383325, at *3–4.

Second, in <u>Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.</u>, the Federal Circuit affirmed a summary judgment ruling that defendant's importation of an alleged infringing product was exempt from patent infringement under the safe harbor of 35 U.S.C. § 271(e)(1), which generally permits importation for the purpose of seeking regulatory approval.[6]  96 F.4th

---

[6] Specifically, 35 U.S.C. § 271(e)(1) provides, in relevant part, that "[i]t shall not be an act of infringement to… import into the United States a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products."

1347, 1353 (Fed. Cir. 2024).  Although the case reached the Federal Circuit on summary judgment, Plaintiff emphasizes that, at the motion to dismiss stage, the Northern District of California rejected defendant's argument that its importation of the alleged infringing product for display at a medical conference was insufficient for damages.  [ECF No. 33 at 12].   That Court noted that "the act of importation may constitute patent infringement even if no commercialization takes place" and that "even a single act of infringement suffices for . . . [plaintiff] . . . to seek damages against the [d]efendants, even if that act is commercially minor and not likely to repeat in the future."  Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd., No. 4:19-cv-06593, 2020 WL 789559, at *4, n.4 (N.D. Cal. Feb. 18, 2020).  Because the Federal Circuit defined the "relevant inquiry" in its summary judgment ruling as "whether the act of importation was for a use reasonably related to submitting information to the FDA," 96 F.4th at 1353, Plaintiff contends that the Federal Circuit, like the district court, "acknowledged that importation occurred" for purposes of § 271(a), [ECF No. 33 at 13].

Plaintiff's analysis is not entirely accurate.  In actuality, the Federal Circuit did not address § 271(a), revisit the district court's motion to dismiss holding, or otherwise opine as to whether importation with a limited commercial purpose would have been direct infringement under § 271(a) absent the safe harbor of § 271(e)(1).  See generally Edwards Lifesciences Corp. 96 F.4th 1347 (Fed. Cir. 2024).  It is therefore not clear that the Federal Circuit intended to affirm that an importation, without commercial intent, satisfies § 271(a).  That said, given the Federal Circuit's prior guidance that § 271(e)(1) exempts from liability the "potentially infringing activities" listed in § 271(a), Telectronics Pacing Sys., Inc. v. Ventritex, Inc., 982 F.2d 1520, 1523 (Fed. Cir. 1992), it seems logical that the definition of an "import" under § 271(a) would be coextensive with that of an import under § 271(e)(1), meaning that an alleged act of

exempted importation under § 271(e)(1) is an infringing importation under § 271(a) absent the criteria for exemption being satisfied. In any event, while inconclusive, <u>Edwards Lifesciences</u> certainly left open the possibility that an importation with limited commercial purpose could impose direct infringement liability under § 271(a).

Absent any indication from the Federal Circuit that more than an act of importation, regardless of the purpose, is required for liability under § 271(a) and given the language of the statute, the Court will not require such here.[7] And, ultimately, this Court need not decide the open question because Plaintiff's allegations, at least as to the '592 Patent, clear the higher bar of commercial intent at this preliminary stage. Regarding the '592 Patent, Plaintiff has pleaded that 1) it was issued on July 4, 2023, [Compl. ¶ 9], 2) sometime at or near November 2023, Defendant imported the Accused Product for purposes of displaying it at TLM23, [<u>id.</u> at ¶ 5], and 3) in conjunction with that conference, Defendant advertised to attendees that it would begin "taking orders" for the Accused Product, [<u>id.</u> at ¶ 6]. Construing the Complaint's allegations generously, as the Court must on a motion to dismiss, Plaintiff's allegations sufficiently plead an

---

[7] Plaintiff also makes a compelling case that the principles of statutory interpretation support that importation is enough for direct infringement liability absent any further commercial intent. [ECF No. 33 at 7–12]. The plain language of § 271(a) is straightforward and contains no qualifier on "imports," nor is there any legislative history to support that Congress intended such a requirement when drafting § 271(a). Congress evidenced its ability and willingness to parse particular circumstances when, in drafting § 271, it specifically exempted importation for obtaining regulatory approval from infringing conduct. 35 U.S.C. §271(e)(1). In other words, the Court agrees with Plaintiff that §271(e)(1) "shows that when Congress wanted to create exceptions to the infringing acts in § 271(a) it knew how to do exactly that," and it carved out no such exception for "demonstration purposes." [ECF No. 33 at 11]. Additionally, the Supreme Court has previously made clear that direct infringement "is a strict-liability offense," meaning that the "defendant's mental state is irrelevant." <u>Commil USA, LLC v. Cisco Sys., Inc.</u>, 575 U.S. 632, 639 (2015). This is difficult to reconcile with an importation standard which would require proof of a defendant's commercial intent.

intent to sell the Accused Product at TLM23 or close in time to the event to withstand the motion to dismiss.[8]

The same cannot be said, however, for the '497 Patent. "Section 271(a) imposes temporal limits on a direct infringement claim with the explicit provision that the infringement must occur 'during the term of the patent.'" Upjohn Co. v. Syntro Corp., No. 89-cv-107, 1990 WL 79232, at *3 (D. Del. Mar. 9, 1990). "Therefore, '[a]cts of making, using or selling prior to issuance give rise to no liability under the federal patent laws.'" Id. (quoting 4 D. Chisum, Patents § 16.04[3], at 16–53–54 (1990)); see also Foster v. American Mach. & Foundry Co., 492 F.2d 1317, 1323 (2d Cir. 1974) ("With respect to the units sold before the issue date of the . . . [asserted] . . . patent, the sale could not have been, at the time, an infringement, or an inducement to infringe."). The Complaint pleads that Defendant imported the Accused Product "by bringing it into the United States, and specifically into this District and for use in this District" at TLM23 in November 2023, [Compl. ¶ 5], which is well before the '497 Patent was issued, [id. ¶ 13 (alleging '497 Patent issued on May 14, 2024)]. Thus, the importation for TLM23 cannot impose direct liability for the '497 Patent because the importation predates issuance, Foster, 492

---

[8] Because Plaintiff's allegations regarding importation are sufficient to withstand the motion to dismiss on the '592 Patent, the Court need not reach Plaintiff's use, sale, or offer to sell allegations. That said, the Federal Circuit has previously noted in dicta that "[a] demonstration of an accused device plus the simultaneous solicitation of purchase orders has been held to amount to a sufficient degree of 'selling' activity" to impose liability under § 271(a)." Med. Sols Inc. v. C Change Surgical LLC, 541 F.3d 1136, 1140 n.3 (Fed. Cir. 2008). Plaintiff makes such allegations here, see, e.g., [Compl. ¶¶ 5, 6], and the Court would find the Federal Circuit's guidance persuasive in ruling on whether Plaintiff has adequately pleaded a use, sale, or offer to sell.

F.2d at 1323, and there are no factual allegations in the Complaint that Defendant imported the Accused Product again after the '497 Patent issued, see generally [Compl.].[9]

Regarding other conduct that could constitute direct infringement, such as a use, sale, or offer to sell, the Complaint pleads only one factual allegation post-issuance of the '497 Patent. The Complaint states that Defendant "has continued marketing the Hepatoscope in the United States, recently announcing its upcoming attendance at the Digestive Disease Week conference in Washington, D.C. On May 18–21, 2024 and at the American Diabetes Association Scientific Sessions conference in Orlando, FL on June 21–24." [Compl. ¶ 23]. The underlying LinkedIn post invites consumers to meet Defendant at the conferences to "discover Hepatoscope." [Id.]. Even read generously, this forward-looking allegation does not sufficiently plead direct infringement because it does not establish that Defendant demonstrated, sold, or offered to sell the Accused Product at the shows. In fact, it does not even establish that Defendant attended these shows. Any inference that Defendant not only attended but also demonstrated, sold, or offered to sell the Accused Product would be entirely speculative, which is outside the bounds of this Court's inquiry on a motion to dismiss. As such, Plaintiff has not pleaded any facts post-dating the '497 Patent's issuance that could give rise to direct infringement liability under § 271(a).

Accordingly, Defendant's motion to dismiss the direct infringement claim is **DENIED** as to the '592 Patent and **GRANTED** as to the '497 Patent.

_____

[9] Plaintiff makes conclusory allegations that, since the '497 Patent was issued, Defendant has continued to "engage in the same promotion activities for the Accused Product (which also include use, sale, offer for sale and/or importation." See, e.g., [Compl. ¶ 32]. Without further factual allegations to support that Defendant continued to import the Accused Product, the Court declines to credit such conclusory assertions, which do little more than parrot the statute.

### B. Knowledge

Defendant contends that Plaintiff has inadequately pleaded that it had knowledge of the

'497 Patent.[10]  Knowledge is a required element for both indirect and willful infringement

claims.  See Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir.

2004); WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1340 (Fed. Cir. 2016) (explaining the

importance of "assessing the infringer's knowledge at the time of the challenged conduct").

Defendant argues that "Plaintiff's only allegation that . . . [Defendant] . . . had any

knowledge of its alleged patent infringement of the '497 Patent is based solely on the filing of

the Complaint, which is insufficient to allege indirect infringement."  [ECF No. 21 at 14]; see

also [ECF No. 27 at 10–11].  Plaintiff responds that it has adequately pleaded both pre-suit and

post-suit knowledge of the '497 Patent.  [ECF No. 24 at 14–16].

Knowledge of a patent can be demonstrated by a totality of the circumstances analysis,

WCM Indus., Inc. v. IPS Corp., 721 F. App'x 959, 970 (Fed. Cir. 2018), and it can be proven

using circumstantial evidence, SiOnyx, LLC v. Hamamatsu Photonics K.K., 330 F. Supp. 3d

574, 608–10 (D. Mass. 2018).  The Court turns to this analysis next.

### 1. Pre-Suit Knowledge

Plaintiff contends that it has sufficiently pleaded knowledge of the '497 Patent dating

back to November 2023 because the '592 Patent is the parent of the '497 patent and "knowledge

of the parent patent is sufficient at the pleadings stage."[11]  [ECF No. 24 at 15–16].  Defendant

---

[10] Defendant does not appear to dispute that it had knowledge of the '592 Patent, [ECF No. 21 at 13–14 (arguing the Complaint does not allege Defendant "had pre-suit knowledge of the '497 [P]atent" without reference to the '592 Patent)], and the Complaint establishes that Plaintiff informed Defendant on November 20, 2023 that it had infringed the '592 Patent, [Compl. ¶ 12]; see also [ECF No. 1-8].

[11] Plaintiffs also argue that Defendants were willfully blind to the '497 Patent, which can also satisfy the knowledge requirement.  Willful blindness has "two basic requirements":

responds that its "knowledge of the '592 Patent does not automatically confer knowledge of all subsequent progeny of that parent" and that "[i]n the few cases where a defendant has been deemed to have knowledge of a related patent, those defendants have been consistently found to actively monitor prosecution activities, which is not the case here, where . . . [Defendant] . . . is a small start-up company."  [ECF No. 27 at 10–11].

Although Plaintiff is correct that some courts have factored knowledge of the parent patent into the totality of the circumstances analysis, Defendant is also correct that knowledge of the parent is rarely, if ever, the only allegation evidencing defendant's knowledge.  Typically, there is other circumstantial evidence, such as the competitive relationship between the parties, a history of prior patent litigation, or allegations that defendant monitored patent prosecutions. See, e.g., Bio-Rad, 2020 WL 2079422, at *5 (imputing to defendant knowledge of asserted patent based on knowledge of parent "given [the parties'] nature as competitors in a specialized market, previous patent litigation between . . . [the parties] . . . and access to . . . [Plaintiff's] . . . droplet patent portfolio"); SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd., 396 F. Supp. 3d 323, 334 (S.D.N.Y. 2019) (in addition to evidence that defendant knew of the parent patent, there was also circumstantial evidence, such as the fact that defendant's "internal architecture documents" bore "notable similarities" to the asserted patent, supporting a finding of

---

(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.  . . . Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.

Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769 (2011).  The Complaint is devoid of any allegations of willful blindness or even allegations that Defendant took affirmative, deliberate actions to avoid learning of the '497 Patent or that Defendant subjectively believed that the '497 Patent existed.  As such, the Court finds the Plaintiff has not adequately alleged knowledge of the '497 patent based on willful blindness.

knowledge); Elm 3DS Innovations, LLC v. Samsung Elecs. Co., No. 14-cv-1430, 2015 WL

5725768, at *3 (D. Del. Sept. 29, 2015), report and recommendation adopted, No. 14-cv-1430,

2016 WL 1274812 (D. Del. Mar. 31, 2016) (finding defendant had knowledge of the asserted

patent where plaintiff pleaded that defendant knew of the parent patent, defendant had "some

fairly detailed, specific discussions about the [] patent's parent—and went on to cite to other

patents from the same patent family thereafter," and where the related patent was "well known

and frequently referenced in the semiconductor industry, and that it has been frequently cited by

[d]efendants' competitors… over the last many years"); cf. Express Mobile, Inc., v. Squarespace,

Inc., No. 20-cv-1163, 2021 WL 3772040, at *4 (D. Del. Aug. 25, 2021) (granting motion to

dismiss on induced infringement claim where plaintiff pled knowledge of related patent based

only on knowledge of parent patent, which did not "plausibly support an allegation that

Defendant knew that the third parties' acts were infringing"); Glob. Tech LED, LLC v. Every

Watt Matters, LLC, No. 15-cv-61933, 2016 WL 8739321, at *5 (S.D. Fla. Aug. 1, 2016)

(denying motion to dismiss willful infringement claim where plaintiff pleaded knowledge of

relevant patent based on knowledge of parent patent).

        Here, the Complaint is devoid of any factual allegations, other than Defendant's

knowledge of the '592 Patent, that would allow a plausible inference that Defendant also knew

of the '497 Patent.  The Complaint does not plead, for example, that the parties have engaged in

patent litigation in the past or that Defendant monitors or has the resources to monitor patent

applications.  Cf. Bio-Rad, 2020 WL 2079422, at *5.  In reading the instant Complaint, the Court

does not even know if Plaintiff and Defendant are competitors in the marketplace, other than as

to the Accused Product, or even what business Plaintiff and/or Defendant are engaged in.  See

generally [Compl.]; Bio-Rad, 2020 WL 2079422, at *5.  Without more, the Court declines to impute knowledge to Defendant of the '497 Patent dating back to November 2023.

### 2. Post-Suit Knowledge

As to post-suit knowledge, Defendant's argument is twofold, namely that 1) pre-suit knowledge is required to state a claim for indirect or willful infringement and 2) knowledge based on filing a Complaint, standing on its own, is not enough to state a claim.  [ECF No. 21 at 14]; [ECF No. 27 at 10].  Plaintiff contends that the Court should permit the Complaint to serve as knowledge of the '497 Patent, which it contends is the majority view.  [ECF No. 24 at 14].

"There is a conflict between district courts, including those in this district, as to whether an alleged inducer must be shown to have had knowledge of the patent prior to the filing of a lawsuit," Canon, Inc. v. Avigilon USA Corp., Inc., 411 F. Supp. 3d 162, 164–65 (D. Mass. 2019), and neither the Federal Circuit nor the First Circuit has  weighed in on the issue.  As Defendant suggests, "[o]ne line of cases holds that knowledge for purposes of an indirect infringement claim is not established where 'the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit.'"  ESCO Grp. LLC v. Deere & Co., No. 20-cv-1679, 2023 WL 4199413, at *7 (D. Del. June 22, 2023) (quoting ZapFraud, Inc. v. Barracuda Networks, Inc., 528 F. Supp. 3d 247, 252 (D. Del. 2021).  This minority approach, to which several session of this court have adhered, reasons that because "[i]t is difficult to perceive how a plaintiff, when relying upon post-filing knowledge to satisfy the requirements of a claim of induced infringement, can have any evidentiary support for its claim at the time of filing," an initial complaint is sufficient to demonstrate actual knowledge only if there is a later amended complaint that alleges knowledge based on the filing of the initial complaint.  Zond, Inc. v. Fujitsu Semiconduct Ltd., 990 F. Supp. 2d 50, 57 (D. Mass. 2014); see also Zond, Inc. v. SK Hynix Inc., No. 13-cv-11570, 2014 WL

346008, at *3 (D. Mass. Jan. 31, 2014) ("This court holds that pleading actual knowledge as of the date of the filing of the original complaint sufficiently states a claim for induced infringement, but only in a later amended complaint."); but see Simplivity, 2016 WL 5388951, at *7 ("[T]he court sees no reason why service of the complaint could not support liability for allegedly infringing activity post-dating the service of the Complaint[.]").

On the other hand, the majority approach, which Plaintiff urges this Court adopt, holds that "the initial complaint may serve to provide the required knowledge for a claim of post-suit indirect infringement." ESCO, 2023 WL 4199413, at *7. This approach reasons that it "serve[s] little purpose to require the plaintiff to go through the formality of 'fil[ing] an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.'" Id. at 8 (quoting IOENGINE, LLC v. PayPal Holdings, Inc., No. 18-cv-452, 2019 WL 330515, at *4 n.1 (D. Del. Jan. 25, 2019); see also SoftView LLC v. Apple Inc., No. 10-cv-389, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ) ("In the Court's view, an accused infringer is on notice of the patent(s)-in-suit once an initial pleading identifies the patents-in-suit, and a patentee that successfully proves the remaining legal elements of indirect infringement is entitled to recover for any post-filing indirect infringement of those patents.").

On balance, the Court agrees with the majority approach and sees no reason why the Complaint cannot serve as knowledge for any subsequent acts of indirect or willful infringement, particularly at this preliminary stage. RightQuestion, LLC v. Samsung Elecs. Co., Ltd., No. 2:21-cv-00238, 2022 WL 507487, at *3 (E.D. Tex. Feb. 18, 2022) (repeating prior holding that it is "'premature at this early stage in the proceedings to distinguish between pre-suit and post-filing conduct for the purposes of induced infringement' where it is clear that 'Defendants had

knowledge of the Asserted Patents for at least some time during the infringement period'"

(quoting BillJCo, LLC v. Cisco Sys., Inc., No. 2:21-cv-183, 2021 WL 6618529, at *6 (E.D. Tex.

Nov. 30, 2021)).  Liability will be limited, however, to when Defendant had the requisite

knowledge which, based on Plaintiff's allegations in the Complaint, began "as early as the filing

of this Complaint."[12]  [Compl. ¶ 16].

### C.    Indirect Infringement

A claim for indirect infringement can be based on inducement under 35 U.S.C.

§ 271(b) or contributory infringement under 35 U.S.C. § 271(c).  Plaintiff brings both claims as

to the '592 Patent and the '497 Patent.  [Compl. ¶¶ 22–25, 32–33].

#### 1.    Induced Infringement

Under 35 U.S.C. § 271(b), a person or entity that actively induces infringement of a

patent is liable as an infringer.  To state a claim under an inducement theory, the plaintiff must

establish: 1) evidence of direct infringement, and 2) that "the defendant, with knowledge of the

patent, actively and knowingly aided and abetted such direct infringement."  Nalco Co. v. Turner

Designs, Inc., 73 F. Supp. 3d 1096, 1102 (N.D. Cal. 2014) (quoting Meyer Intell. Props. Ltd. v.

Bodum, Inc., 690 F.3d 1354, 1366 (Fed. Cir. 2012)) (additional citation omitted).  In other

words, Plaintiff must allege Defendant 1) knew of the patent, 2) knowingly induced infringing

acts, and 3) acted with specific intent.  Zond, 990 F. Supp. 2d at 55 (citing Vita-Mix Corp. v.

Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

---

[12] Because Plaintiff has pleaded that Defendant knew of the '497 Patent at the time it was filed, reading the allegations generously at the motion to dismiss stage, the Court imputes knowledge back to that date.  That said, should the summary judgment record and/or trial record reflect that Defendant did not, in fact, have knowledge of the Complaint until service, liability will be limited to that moment onwards.

Plaintiff contends that the Complaint "contains specific factual allegations showing that . . . [Defendant] . . . was aware of the Asserted Patents. . .  and via its user manuals, advertising, and other materials [] urged, aided, and/or instructed its distributors and users to infringe."  [ECF No. 24 at 19].  Specifically, Plaintiff asserts that "the Complaint [] provides detailed claim charts, which heavily cite the user manual and how the manual teaches users how to use the product in an infringing manner. . . [and] cite numerous examples of . . . [Defendant] . . . telling its users how to use the Accused Product through its website and videos."  [Id. at 19].  Defendant argues that it cannot be liable for induced infringement because 1) Plaintiff has not identified a direct infringer, 2) Plaintiff's allegations that Defendant acted with intent are conclusory, and 3) "the mere existence of . . . [Defendant's] . . . instruction manual is insufficient to plead induced infringement of the Asserted Patents," particularly where Plaintiff has not identified how the manual "allegedly encourages infringement."  [ECF No. 21 at 13–16].

Intent to induce acts of infringement may be proven by circumstantial evidence.  DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006).  "Courts have . . . determined that advertising one's product for a specific use constitutes induced infringement[.]"  Bio-Rad, 2020 WL 2079422, at *7; see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936 (2005) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe . . . ").  "At a minimum, allegations that Defendant[] created 'materials provid[ing] a description of the functionality of the accused products and the intended use of such products,' such as an instruction manual, 'support an inference that there is at least one direct infringer' and thus an inducement."  Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd., No. 16-cv-11458, 2017 WL 3795769,

at *6 (D. Mass. Aug. 30, 2017) (quoting Sunrise Techs., Inc. v. Cimcon Lighting, Inc., 219 F.

Supp. 3d 260, 265 (D. Mass. 2016)).

Plaintiff has made a plausible claim for induced infringement.  In the Complaint and

through the attached exhibits, Plaintiff alleges that Defendant advertised and instructed that the

Accused Product be used to perform the claimed methods, that is assessing whether a patient has

liver fibrosis.  Plaintiff provides specific factual allegations and a detailed claim chart showing

how Defendant instructed would-be users on how to use the Accused Product in a manner that

infringes the '592 Patent.  See [ECF No. 1-3 (claim chart)]; see also [Compl. ¶¶ 19–24].  Among

the publicly available materials described in the Complaint are statements and videos from

Defendant's own website promoting the Accused Product and illustrating its uses, as well as a

user manual for the Accused Product, which is also housed on Defendant's website and which

Plaintiff specifically maps onto each element of its claim chart to demonstrate how it encourages

infringement.  See [Compl. ¶ 19 ("The claim chart attached hereto as Exhibit C describes how

the elements of exemplary claims 1 and 8 of the '592 Patent are infringed by the Accused

Product."); 24 ("Moreover, the instruction manual at Exhibit E for the Accused Product instructs

users how to use the Accused Product, which induces at least method claim 8 of the '592

Patent.")]; see also [ECF Nos. 1-3; 1-5].  These allegations, contrary to Defendant's contentions,

are not conclusory, as they plainly explain how the manual encourages infringement, and they

are accordingly sufficient at the motion to dismiss stage to permit an inference that at least one

direct infringer exists.[13]  See Lexington Luminance, 2017 WL 3795769, at *6; Sunrise Techs.,

---

[13] Defendant contends that Plaintiff's indirect infringement claims fail because the Complaint
does not identify any direct infringers that Defendant allegedly induced or encouraged to
infringe.  [ECF No. 21 at 13].  Defendant's argument misses the mark.  At this preliminary stage,
Plaintiff need not identify the alleged third-party direct infringers with specificity; rather,

219 F. Supp. 3d at 265 ("Plaintiff alleges that defendant's marketing materials provide a description of the functionality of the accused products and the intended use of such products and thereby infringes the . . . [asserted] . . . patent.  Such allegations are sufficient to support an inference that there is at least one direct infringer.").  "Furthermore, because the Court has concluded that the allegations plausibly allege that the . . . [asserted] . . . patent was infringed, that allegation creates a 'reasonable inference, especially at the motion to dismiss stage that the manufacturer/importer intended to encourage infringement.'" Lexington Luminance, 2017 WL 3795769, at *6; Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 843 F.3d 1315, 1335 (Fed. Cir. 2016) (collecting cases where circumstantial marketing evidence was sufficient to prove induced infringement beyond the motion to dismiss stage).

As such, Defendant's motion to dismiss is denied as to induced infringement.

### 2. Contributory Infringement

"To establish contributory infringement, the patent owner must show . . . 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention."  Fujitsu, Ltd. v. Netgear, Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010).

As discussed supra, Plaintiff has adequately alleged the first two elements, and Defendant does not contest the fourth element, see [ECF No 21 at 18–19].  Regarding the third element, Plaintiff alleges that the Accused Products have no substantial non-infringing use.  [Compl. ¶¶ 25, 33].  In accepting the claim chart as true for the purposes of the motion to dismiss, the Accused Product cannot be used in a way that does not perform the claimed methods.  See [ECF

---

Plaintiff must put forth enough facts "to allow an inference that at least one direct infringer exists."  In re Bill of Lading, 681 F.3d at 1336.  As discussed supra, the allegations here are sufficient to raise that inference.

No. 1-3].  At this preliminary stage, this is all that is required.  <u>Nalco</u>, 883 F.3d at 1357 (finding allegation that accused product "was formulated" for a specific use and had "no substantial non-infringing uses" was enough to withstand a motion to dismiss, stating, "We must presume these allegations are true at the pleading stage. To the extent [d]efendants dispute these allegations, this is a factual inquiry not suitable for resolution on a motion to dismiss."); <u>see also</u> <u>IOENGINE</u>, 2019 WL 330515, at *5 ("[S]imply pleading the absence of substantial non-infringing uses is normally sufficient to satisfy the pleading requirement for that element of contributory infringement.").  Thus, Defendants motion to dismiss is denied as to the contributory infringement claims.

Because Plaintiff has pleaded sufficient facts for both induced and contributory infringement, Defendant's motion to dismiss these claims is **<u>DENIED</u>**.

### D.    Willful Infringement

To state a claim for willful infringement, a claimant must plausibly allege that defendant (1) knew of the patent and (2) knew of its alleged infringement.  <u>See</u> <u>Sunrise Techs.</u>, 219 F. Supp. 3d at  265 (citing <u>Select Retrieval, LLC v. Bulbs.com Inc.</u>, No. 12–cv-10389, 2012 WL 6045942, at *6 (D. Mass. Dec. 4, 2012)).

For the same reasons explained above, Plaintiff has plausibly alleged knowledge of the '592 Patent dating back to November 2023, as well as infringement of that patent.  Plaintiff has also plausibly alleged knowledge of the '497 Patent from May 24, 2024, the date the Complaint was filed, as well as infringement of that patent.  At this juncture, that is all that is required.  <u>Lexington Luminance</u>, 2017 WL 3795769, at *6 (at the motion to dismiss stage, "a plaintiff is not required to allege more than knowledge of the patent and of infringement").  Accordingly, Defendant's motion to dismiss Plaintiff's willful infringement claims is **<u>DENIED</u>**.

**IV.      CONCLUSION**

Accordingly, Defendants' Motion, [ECF No. 20], is **DENIED** as to the '592 Patent

(Count I).  It is **GRANTED** as to '497 Patent's (Count II) direct infringement claim but

**DENIED** as to the indirect and willful infringement claims.

**SO ORDERED.**

March 20, 2025                                                          */s/ Allison D. Burroughs*
                                                                       ALLISON D. BURROUGHS
                                                                       U.S. DISTRICT JUDGE